United States Court of Appeals,

Fifth Circuit.

No. 95-10301.

Steven D. HAMILTON, Plaintiff-Appellant,

v.

D. LYONS, Lt. and DeSoto Police Department, Defendants-Appellees.

Feb. 7, 1996.

Appeal from the United States District Court for the Northern District of Texas.

Before REYNALDO G. GARZA, BARKSDALE and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Plaintiff Steven D. Hamilton appeals the district court's dismissal of his civil rights suit, brought pursuant to 42 U.S.C. § 1983. The district court dismissed the suit as frivolous, pursuant to 28 U.S.C. § 1915(d). We affirm.

I

Hamilton was arrested for multiple counts of aggravated sexual assault and indecency with a child. At the time of his arrest, Hamilton was on parole from prior convictions. Following his arrest, Hamilton was held at the DeSoto City Jail. Hamilton alleges that Defendant Lyons, an investigating officer in the DeSoto City Jail, told him that he would not be transferred to the Dallas County Jail until he made a statement regarding the charges pending against him. Hamilton also alleges that Lyons denied him visitation, telephone access, recreation, mail, legal materials, sheets, and showers. After Hamilton gave a statement regarding the charges pending against him, he was transferred to the Dallas County Jail. Prior to trial on the new charges, Hamilton's parole was revoked. Hamilton is currently serving a life sentence concurrently with multiple twenty-year sentences as an inmate of the Texas Department of Criminal Justice. Hamilton brought this § 1983 civil rights suit challenging the actions of Lyons and the conditions of his confinement at the DeSoto City Jail. The district court dismissed his claims as frivolous. Hamilton timely filed his notice of appeal.

II

We review a district court's § 1915(d) dismissal for abuse of discretion. *Denton v. Hernandez,* 504 U.S. 25, 33, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992). A complaint is "frivolous," for purposes of § 1915(d), if it lacks an arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989). In *Heck v. Humphrey,* the Supreme Court held that a plaintiff who seeks to recover damages under § 1983 for actions whose unlawfulness would render a conviction or sentence invalid must first prove that the conviction or sentence has been reversed, expunged, invalidated, or otherwise called into question. --- U.S. ----, ----, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994). A § 1983 claim which falls under the rule in *Heck* is legally frivolous unless the conviction or sentence at issue has been reversed, expunged, invalidated, or otherwise called into question. *Boyd v. Biggers,* 31 F.3d 279, 283 (5th Cir.1994). A § 1983 claim falls under the rule in *Heck* only when a judgment in favor of the plaintiff would necessarily imply the invalidity of a subsequent conviction or sentence. Therefore, we must first consider whether a judgment in favor of Hamilton on any of his claims would necessarily imply the invalidity of his convictions or sentences.

A

Hamilton alleges that Lyons violated his constitutional rights by using the conditions of Hamilton's confinement in the DeSoto City Jail in order to coerce him to give a statement. Statements obtained through either physical or psychological coercion of a defendant in police custody violate that defendant's Fifth Amendment privilege against self-incrimination, and thus cannot be used against him at trial. *Miranda v. Arizona,* 384 U.S. 436, 478-79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). If we were to find that Lyons coerced Hamilton to give a statement concerning the charges pending against him, that judgment would necessarily imply the invalidity of his subsequent convictions and sentences on those charges. *See Harryman v. Estelle,* 616 F.2d 870, 875 n. 12 (5th Cir.) (noting that prosecutorial use of involuntary statements can never be treated as harmless error), *cert. denied,* 449 U.S. 860, 101 S.Ct. 161, 66 L.Ed.2d 76 (1980). Thus, *Heck* bars this claim unless Hamilton proves that his convictions or sentences have been reversed, expunged,

invalidated, or otherwise called into question. Since Hamilton has not made such a showing, this claim is legally frivolous. Accordingly, the district court did not err in dismissing the claim under § 1915(d).

B

Hamilton also alleges that Lyons violated his constitutional rights by altering and destroying evidence relevant to the charges against him. Convictions tainted by the suppression, destruction, or alteration of material evidence violate a defendant's Fourteenth Amendment right to due process. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963). If we were to find that Lyons altered and destroyed evidence relevant to the charges against Hamilton, that judgment would necessarily imply the invalidity of his subsequent convictions and sentences on those charges. *See Heck,* --- U.S. at ----, 114 S.Ct. at 2368, 2374 (holding that allegation of knowing destruction of exculpatory evidence necessarily implied invalidity of conviction and sentence). Thus, *Heck* also bars this claim unless Hamilton proves that his convictions or sentences have been reversed, expunged, invalidated, or otherwise called into question. Since Hamilton has not made such a showing, this claim is legally frivolous. Accordingly, the district court did not err in dismissing this claim under § 1915(d).

C

Hamilton also alleges that the conditions at the DeSoto City Jail violated his constitutional rights. The Eighth Amendment prohibits the imposition of prison conditions that constitute "cruel and unusual punishment." *Rhodes v. Chapman,* 452 U.S. 337, 345, 101 S.Ct. 2392, 2398, 69 L.Ed.2d 59 (1981). The Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute "punishment." *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979). These allegations, challenging the conditions of Hamilton's confinement in and of themselves, are unrelated to the validity of Hamilton's subsequent convictions and sentences. Thus, a judgment finding the conditions at the DeSoto City Jail unconstitutional would not necessarily imply the invalidity of Hamilton's subsequent convictions and

sentences.[1]  Therefore, in order to state a cognizable claim under § 1983, Hamilton need not prove

that his convictions or sentence has been reversed, expunged, invalidated, or otherwise called into

question.  We now address the merits of this claim.

The Eighth Amendment prohibits punishments which are cruel and unusual.  Prison

conditions constitute cruel and unusual punishment if they involve the "wanton and unnecessary

infliction of pain [or if they are] grossly disproportionate to the severity of the crime warranting

imprisonment."  *Rhodes,* 452 U.S. at 347, 101 S.Ct. at 2399;  *see also Estelle v. Gamble,* 429 U.S.

97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) (holding deliberate indifference to an inmate's

medical needs to be cruel and unusual);  *Hutto v. Finney,* 437 U.S. 678, 687, 98 S.Ct. 2565, 2571,

57 L.Ed.2d 522 (1978) (finding prison conditions marked by insufficient diet, severe overcrowding,

rampant violence, vandalism, and extended punitive isolation to be cruel and unusual).  However,

prison conditions are not unconstitutional simply because they are restrictive;  restrictive conditions

"are part of the penalty that criminal offenders pay for their offenses against society."  *Rhodes,* 452

U.S. at 347, 101 S.Ct. at 2399.

In *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court

evaluated the constitutionality of conditions of confinement of pretrial detainees.[2]  Because they have

not yet been convicted of the crime with which they are charged, pretrial detainees have a due process

right not to be punished for that crime.  *Id.* at 535 n. 16, 99 S.Ct. at 1872 n. 16.  The Supreme Court

has stated the distinction between conditions that may be constitutionally imposed on convicted

prisoners and conditions that may be imposed on pretrial detainees as follows:

> [T]he State does not acquire the power to punish with which the Eighth Amendment is
> concerned until after it has secured a formal adjudication of guilt in accordance with due
> process of law.  Where the State seeks to impose punishment without such an adjudication,
> the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth

---

[1]*See Heck,* --- U.S. at ---- n. 7, 114 S.Ct. at 2372 n. 7 (noting that a judgment which held that a search was unconstitutional would not necessarily imply the invalidity of a subsequent conviction in which evidence from such a search was admitted, due to doctrines like independent source and inevitable discovery, which under certain conditions allow the use of evidence that is unconstitutionally obtained).

[2]Pretrial detainees are persons who have been charged with a crime but not yet tried on the charge.  *Bell,* 441 U.S. at 523, 99 S.Ct. at 1865.

Amendment.

*Ingraham v. Wright,* 430 U.S. 651, 671-72 n. 40, 97 S.Ct. 1401, 1412-13 n. 40, 51 L.Ed.2d 711 (1977). Courts deciding the constitutionality of conditions of confinement of pretrial detainees must determine whether the conditions complained of are imposed for the purpose of punishment. *Bell,* 441 U.S. at 538, 99 S.Ct. at 1873. Courts may find a punitive purpose upon direct proof of an expressed intent by detention facility officers to punish the pretrial detainee for the crime with which the detainee has been charged but not yet convicted. *Id.* at 538, 99 S.Ct. at 1873-74. In addition, courts may infer a punitive purpose if the challenged condition or restriction is not reasonably related to a legitimate governmental objective.[3] *Id.* at 539, 99 S.Ct. at 1874.

Hamilton challenges the conditions of his confinement at the DeSoto City Jail. We must first determine whether the standard announced in *Bell* should be extended to the claims of a parolee challenging conditions of confinement during his detention following an arrest for a crime committed while on parole. This issue has not been decided by this circuit or any other circuit.[4] In some respects, a detained parolee is like the pretrial detainee envisioned by the Supreme Court in *Bell.* The State does not acquire the power to punish a person for the commission of a particular crime until after the defendant is found guilty of the commission of that crime. *Ingraham,* 430 U.S. at 671-72 n. 40, 97 S.Ct. at 1412-13 n. 40. Thus, a person on parole for one crime who is arrested for a second crime cannot be punished for the commission of the second crime until he is found guilty of the commission of the second crime. In this regard, a parolee may be deemed a "pretrial detainee" with respect to the second crime charged. *See Clark v. Poulton,* 963 F.2d 1361, 1364-65 (10th Cir.) (characterizing a parolee as "in pretrial detention" for purposes of describing his § 1983 claims challenging conditions of his confinement), *cert. denied,* --- U.S. ----, 113 S.Ct. 635, 121 L.Ed.2d

---

[3]"Reasonably related" means that the restriction is (1) rationally related to a legitimate governmental purpose, and (2) not excessive in relation to that purpose. *Bell,* 441 U.S. at 561, 99 S.Ct. at 1886.

[4]In *Rankin v. Klevenhagen,* 5 F.3d 103, 106 (5th Cir.1993), we recognized that both the Fourteenth and Eighth Amendments were implicated by constitutional claims of detained parolees. However, since the same standard applied to the plaintiff's claim of excessive force under both Amendments, we did not decide the issue confronting us today. *Id.*

566 (1992).

However, in many respects, a parolee held in pretrial detention is unlike the pretrial detainee envisioned by the Supreme Court in *Bell.* Due to weighty liberty interests, the typical pretrial detainee is rarely detained prior to trial. *See U.S. v. Salerno,* 481 U.S. 739, 755, 107 S.Ct. 2095, 2105, 95 L.Ed.2d 697 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). The only justification for pretrial detention specifically recognized by the *Bell* Court was to ensure the defendant's appearance at trial on the crime charged. *Bell,* 441 U.S. at 534 n. 15, 99 S.Ct. at 1871 n. 15.[5] The *Bell* Court's descriptions of pretrial detainees, as those persons who have not been found guilty of *any* crime, strongly suggest that the Court spoke with the "typical" pretrial detainee in mind. *See Bell,* 441 U.S. at 536, 99 S.Ct. at 1872 ("A person lawfully committed to pretrial detention has not been adjudged guilty of any crime."); *id.* at 545, 99 S.Ct. at 1877 ("[P]retrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners.").[6]

In contrast, the detained parolee, arrested for a new crime while on parole, is routinely detained prior to trial. The Supreme Court has recognized the "overwhelming" interest of states in regulating the conditions of parole. *See Morrissey v. Brewer,* 408 U.S. 471, 483, 92 S.Ct. 2593, 2601, 33 L.Ed.2d 484 (1972) ("Release of the parolee before the end of his prison sentence is made with the recognition that with many prisoners there is a risk that they will not be able to live in society without committing additional antisocial acts."). Thus, in Texas, a parolee arrested for a crime committed while on parole, regardless of the likelihood that he will appear at trial, "may be held in custody pending a determination of all facts surrounding the alleged offense." TEX.CODE

---

[5]The Supreme Court later ruled that pretrial detention could also be justified in some cases by a governmental interest in community safety. *Salerno,* 481 U.S. at 748, 107 S.Ct. at 2102.

[6]Nothing in this opinion should be read to suggest that *Bell* 's standard does not apply to persons who have been previously convicted of a crime but *fully* served their sentences or *fully* paid their fines.

CRIM.PROC.ANN. art. 42.18 § 13(a).[7] The liberty interests of a parolee are restricted, and are subject to the authority of the State to return the parolee to prison without a full adversary criminal trial. *See Morrissey v. Brewer,* 408 U.S. 471, 483, 92 S.Ct. 2593, 2601, 33 L.Ed.2d 484 (1972) ("The State has found the parolee guilty of a crime against the people. That finding justifies imposing extensive restrictions on the individual's liberty.").

Against this background, we return to the standard announced in *Bell. Bell* provides:

> [I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Bell,* 441 U.S. at 539, 99 S.Ct. at 1874. Such an inference is warranted in the case of the typical pretrial detainee, in which the justification for detention arises *only* from a crime with which the person has been charged but not convicted. For such a person, the due process right to be free from punishment for a pending charge is equivalent to the right to be free from punishment altogether. In such cases, a finding that the government intended to punish the detainee is equivalent to a finding that the government intended to punish the detainee for the pending charge. Thus, an inference that governmental intent was punitive is equivalent to an inference that the challenged condition is unconstitutional.

However, such an inference is not warranted in the case of the detained parolee. Unlike the typical pretrial detainee, the justification for the detention of a detained parolee is dual. As noted by the Seventh Circuit, the detention and subsequent reincarceration of a parolee are only *triggered* by the new arrest; detention and reincarceration are *justified* by the prior conviction. *Faheem-El v. Klincar,* 841 F.2d 712, 717 (7th Cir.1988). For detained parolees, the due process right to be free from punishment for a *pending* charge is *not* equivalent to the right to be free from punishment altogether. In such cases, a finding that the government intended to punish a detained parolee is *not* equivalent to a finding that the government intended to punish the detained parolee for a pending

---

[7]Recognizing the substantial governmental interest in the regulation of parole conditions, the Seventh Circuit upheld a similar Illinois statute against a due process challenge to the statute's failure to provide for a bail hearing for parolees arrested for a criminal offense committed while on parole. *Faheem-El v. Klincar,* 841 F.2d 712, 728-29 (7th Cir.1988).

charge. Thus, an inference that government intent was punitive is *not* equivalent to a finding that the challenged condition is unconstitutional.

We thus apply *Bell* 's standard to detained parolees only to the extent that we recognize that a parolee arrested for a subsequent crime has a due process right to be free from punishment for the subsequent crime until convicted of the subsequent crime. Like the pretrial detainee in *Bell,* the detained parolee may establish a claim for unconstitutional conditions of confinement through direct evidence of an expressed intent by detention facility officers to punish him for the crime for which he has been charged but not yet convicted. However, a court may *not* permissibly infer that a condition of confinement challenged by a detained parolee is unconstitutional merely because the government fails to come forward with evidence that the challenged condition is reasonably related to a legitimate governmental interest. *Bell* tells us nothing about whether conditions of confinement that may not be constitutionally imposed upon "detainees *qua* detainees," *Bell,* 441 U.S. at 539, 99 S.Ct. at 1874, may constitutionally be imposed upon detained parolees.[8]

Hamilton presents no direct evidence that Lyons or any member of the DeSoto City Police Department subjected him to any condition of confinement for the purpose of punishing him for the charges pending against him. Normally, we would remand such a case to allow the development of any such evidence under the legal standard we announce today. *See Eason v. Thaler,* 14 F.3d 8, 10 (5th Cir.1994) (holding dismissal inappropriate if "[w]ith further factual development and specificity these allegations may pass section 1915(d) muster"). However, in this case, remand is unnecessary. Even if Hamilton could show direct evidence that detention facility officials intended to punish him

---

[8]Detained parolees who cannot support a claim of unconstitutional conditions under the Fourteenth Amendment standard we announce today may of course still seek relief under the Eighth Amendment. The constitutional rights of parolees are at least as extensive as those of convicted prisoners. *Sepulveda v. Ramirez,* 967 F.2d 1413, 1416 (9th Cir.1992), *cert. denied,* --- U.S. ----, 114 S.Ct. 342, 126 L.Ed.2d 307 (1993). Hamilton challenges the denial of visitation, telephone, recreation, mail, legal materials, sheets, and showers for a three-day period. We find that these conditions do not constitute cruel and unusual punishment, so as to warrant Eighth Amendment relief. *See Rhodes v. Chapman,* 452 U.S. 337, 347-50, 101 S.Ct. 2392, 2400-01, 69 L.Ed.2d 59 (1981) (holding that double-celling does not constitute cruel and unusual punishment); *Hutto v. Finney,* 437 U.S. 678, 686-87, 98 S.Ct. 2565, 2571, 57 L.Ed.2d 522 (1978) (noting the importance of the length of challenged confinement, "A filthy, overcrowded cell and diet of "grue[l]' might be tolerable for a few days and intolerably cruel for weeks or months.").

for crimes for which he had not yet been convicted, relief under § 1983 would not be warranted. *Bell* tells us that, for all pretrial detainees, " "[t]here is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.' " *Bell,* 441 U.S. at 539 n. 21, 99 S.Ct. at 1874 n. 21 (quoting *Ingraham v. Wright,* 430 U.S. at 674, 97 S.Ct. at 1414). Hamilton alleges that he was denied visitation, telephone access, recreation, mail, legal materials, sheets, and showers for a three-day period. We find that none of these allegations give rise to a constitutional claim. *See Mann v. Smith,* 796 F.2d 79, 85-86 (5th Cir.1986) (finding that pretrial detainee had no right to an elevated bed and no right to hot water); *Cruz v. Hauck,* 515 F.2d 322, 333 (5th Cir.1975) (holding that prisoners not confined at a facility for long enough time to petition the courts had no right of access to legal materials), *cert. denied, Andrade v. Hauck,* 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976). Thus, the district court did not abuse its discretion in dismissing Hamilton's challenge to the conditions of his confinement as frivolous under § 1915(d).[9]

## III

Accordingly, the district court's order dismissing Hamilton's § 1983 civil rights suit as frivolous, pursuant to 28 U.S.C. § 1915(d), is AFFIRMED.

---

[9]Hamilton asserts two other causes of action. In his fourth cause of action, Hamilton alleges that the "actions and inactions of the DeSoto Police Department to properly investigate the complaint filed by plaintiff denied due process and equal protection." His fifth cause of action alleges that the "actions and inactions of all parties involved ... violated the constitutionally protected rights of plaintiff." These allegations merely repeat the substance of the allegations made in Hamilton's first three causes of action. Thus, the district court did not err in dismissing these claims as frivolous under § 1915(d).